UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ATSU O. ACOLATSE,<br><br>                Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>                Defendant.<br>_____ | Case No.: CV 07-04262 PVT<br><br>**ORDER DENYING PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT; AND ORDER REMANDING ACTION FOR FURTHER PROCEEDINGS** |

## I.     INTRODUCTION

Atsu Acolatse suffered from total renal failure and underwent a kidney transplant on January 22, 2008. Mr. Acolatse claims this was the culmination of many years of illnesses, which became disabling in 1992 when he was no longer able to work. Prior to his disability, Mr. Acolatse had had various full-time jobs from the time he emigrated from Ghana to this country in his late teens. From February 1972 to July 15, 1992, Mr. Acolatse was employed full-time and continuously. He worked as a shipping clerk, warehouse clerk, store clerk, and later in the field of computer networking.

After the Social Security Administration denied Mr. Acolatse's claim for disability benefits, he was granted a hearing before Administrative Law Judge Timothy Hannon. ("ALJ"). The ALJ found that Mr. Acolatse was clearly disabled at the time of the hearing which was held on August 19, 2005, but questioned whether his disability began prior to his date last insured of December 31,

1997. The ALJ concluded that Mr. Acolatse had failed to present sufficient evidence to corroborate his claim of disability prior to December 31, 1997, and therefore, found him not disabled. Mr. Acolatse appeals this ruling on the grounds that the ALJ committed legal error by failing to appoint a medical expert at the administrative hearing to review his medical records and advise whether there was sufficient evidence to show disability prior to his date last insured.

Based upon the papers and the Social Security file, the court finds that the failure by the ALJ to appoint a medical expert was legal error. In addition, the ALJ's finding number 4 is not supported by substantial evidence. Accordingly, this matter is REMANDED to the Administrative Law Judge of the Social Security Administration for further proceedings consistent with this order.[1] The parties' respective cross-motions for summary judgment are denied.

## II.   PROCEDURAL BACKGROUND

Mr. Acolatse filed the current application for disability insurance benefits on May 17, 2004, contending severe disabling high blood pressure, kidney failure, and shortness of breath beginning in or around July 15, 1992. The claim was initially denied. Mr. Acolatse then filed a Request for Reconsideration, adding contentions of dizziness, body pain, sweatiness, fatigue, and surgery on both arms and chest (SSA Ex. 6-E), and this reconsideration request was denied on October 15, 2004. He then requested a hearing before an Administrative Law Judge, and added contentions that he had a bladder infection and had had surgery on his right hand. (SSA Ex. 7-E).

On August 19, 2005, Mr. Acolatse appeared before the ALJ for a hearing, represented by counsel, Cynthia Starkey. The ALJ found that Mr. Acolatse was clearly disabled at the time of the hearing, but the questioned whether his disability began prior to his date last insured of December 31, 1997.

Specifically, the ALJ made the following five findings: (1) Mr. Acolatse has sufficient quarters of coverage to be insured only through December 31, 1997; (2) Mr. Acolatse had not engaged in substantial gainful activity since the alleged onset of disability in 1992; (3) there was insufficient medical evidence to corroborate his allegations of any severe impairment lasting for 12

---

[1] The holding of this court is limited to the particular facts and circumstances underlying the present motions.

continuous months beginning prior to his date last insured; (4) there was insufficient longitudinal medical evidence to find that he had had an ongoing, medically-determinable "severe" impairment lasting for 12 continuous months beginning prior to his date last insured; and (5) therefore, Mr. Acolatse was not under a "disability" as defined by the Social Security Act before December 31, 1997.

### III.  FACTUAL BACKGROUND

#### A.  ACOLATSE'S AGE AND WORK EXPERIENCE

Mr. Acolatse was born in Ghana, Africa on February 9, 1949. He emigrated to the United States while in his late teens, and worked full-time at various jobs from February 1972 to July 15, 1992. His employment involved working for companies as a shipping clerk, warehouse clerk, store clerk, and in the field of computer networking.

#### B.  RELEVANT MEDICAL EVIDENCE

##### 1.  DOCUMENTARY EVIDENCE

Mr. Acolatse contends that in the few years preceding July 1992, he became ill, and his illness became steadily worse. He had trouble lifting, moving, standing and sitting for any normal period of time. He claims to have suffered from pain in the back and lower side area ("flank"), while also suffering from hypertension, chronic fatigue syndrome, and an inability to concentrate.

Mr. Acolatse was under the care of Dr. Boatwright from 1992 to 1994. Dr. Boatwright has since retired from medical practice. The doctor states he was unable to locate Mr. Acolatse after he retired from his medical practice, and thus, disposed of his medical records.

Mr. Acolatse claims that since his illness continued to bother him, he decided to return to his native Ghana to seek traditional herbal treatments. He was in Ghana from 1994 to 2000, at which point, he returned to the United States. Only sparse medical records exist from Mr. Acolatse's time in Ghana. However, the records do reflect certain laboratory tests and results for Mr. Acolatse. Prior to his date last insured, Mr. Acolatse appears to have been receiving medical treatment from an herbal practitioner named Dr. Owusa Ansah for hypertension, back pain, and subjective fatigue in Ghana. (SSA Ex. 5-F).

In April 2000, after Mr. Acolatse returned to the United States, he complained of chest and

1  abdominal pain.  A CT scan and other tests were conducted and ruled out acute cardiopulmonary

2  disease or kidney stones.  However, the CT scan did show some possible retroperitoneal fibrosis.

3  (SSA Ex. 1-F, pg. 68-69).  A biopsy later confirmed this diagnosis.  In or around 2002, Mr. Acolatse

4  was diagnosed with right hydronephrosis and peritoneal fibrosis, thus showing that his kidneys were

5  in declining health.  By March 2003, he was receiving dialysis for kidney disease/renal

6  insufficiency.          **2.        STATEMENTS FROM OTHER TREATING PHYSICIANS**

7         Dr. S.K. DD. Pomenya, the principal medical officer of the Usher Polyclinic in Ghana,

8  submitted a declaration stating that although he had been unable to locate Mr. Acolatse's medical

9  file, he remembered treating Mr. Acolatse for back pain, fatigue, constipation, hypertension, anemia,

10 and tiredness.  (SSA Ex. 13-F).  After a right renal cyst had been discovered on a February 15, 2000

11 ultrasound, Dr. Pomenya concluded that Mr. Acolatse was "unable to do full-time work."  *Id.*

12        Dr. Cynthia Lin, an internist at Santa Clara Valley Medical Center, who treated Mr. Acolatse

13 beginning in 2004, stated that she had seen blood tests for Mr. Acolatse dating back to 1997, which

14 revealed evidence of kidney disease.  (SSA Ex. 14-F).  However, the ALJ noted that she was unable

15 to say what exactly the blood tests confirmed or the extent of the disease at that time.

16        Additionally, Dr. Boatwright remembers that he had diagnosed Mr. Acolatse with

17 hypertension and probable early congestive heart failure.  He had discussed treatment regimens with

18 Mr. Acolatse and the possible complications of both problems in conjunction with his sickle cell

19 anemia trait.  Dr. Boatwright also states that he warned Mr. Acolatse prior to December 31, 1997,

20 about the possibility of developing worsening renal status which could ultimately lead to renal

21 failure.  (SSA Ex. 16-F).

22        **C.     THE ALJ'S DECISION**

23        On November 22, 2005, the ALJ issued his decision.  The decision became the final decision

24 of the Commissioner upon denial by the Appeals Council for further review.  In the decision, the

25 ALJ reasoned that there was only minimal and relatively minor documentary medical evidence from

26 the relevant period prior to the claimant's date last insured.  Also, the treating physicians were

27 testifying from memory almost ten years after their respective periods of treatment without having

28 had the opportunity to refresh their memories using original treatment notes.  Because the ALJ was

unable to sufficiently corroborate Mr. Acolatse's allegations of severe impairments which would have significantly limited his ability to perform basic work activities for 12 continuous months beginning prior to his date last insured, a finding of "not disabled" was directed at the second sequential step in the five-step analysis set forth in 20 CFR §§ 404.1520, 1521.

## IV.     LEGAL STANDARDS

### A.     REVIEW OF ALJ'S DECISION BY A DISTRICT COURT

District courts have the power to review an ALJ's decision under the following standard:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides.  The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.

42 U.S.C.A. § 405(g)  (West 2006).

The reviewing court may "set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error." *Ukolov v. Barnhart*, 430 F.3d 1002, 1004 (9th cir. 2005) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.2002)).  Substantial evidence is "more than a mere scintilla" but "less than a preponderance;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v Perales*, 402 U.S. 389 (1971).  "The claimant carries the initial burden of proving a disability."  *Id* (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).  Failure to prove disability justifies a denial of benefits.  *Id.*  While courts must look at the record as a whole, considering both evidence that supports and that undermines the ALJ's findings, it is the ALJ's function to resolve conflicts in the evidence.  *See Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016 (9th Cir. 1992).

To disregard the uncontradicted opinion of a treating physician, an ALJ must provide clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830-1 (9th Cir. 1996).  If a treating physician's opinion is contradicted by a non-treating doctor, the treating physician's opinion may be rejected only for specific and legitimate reasons supported by substantial evidence in the record.

*Ibid.*

Similarly, when a claimant demonstrates the existence of a condition that would cause some degree of pain or dysfunction, the ALJ must articulate specific, convincing reasons for rejecting the claimant's subjective testimony regarding his pain and limitations. *See e.g. Tonapetyan v. Halter*, 242 F.3d 1144, 1147-8 (9th cir. 2001). An ALJ may not reject a claimant's statements regarding his limitations merely because they are not supported by objective evidence. *Id* at 1147.

The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner. *See Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996); and *Allen v. Secretary of Health and Human Services*, 726 F.2d 1470, 1473 (9th Cir. 1984) ("If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld.").

## V. DISCUSSION

### A. THE ALJ ERRED IN FAILING TO APPOINT A MEDICAL EXPERT TO INTERPRET THE EVIDENCE, AS REQUESTED BY MR. ACOLATSE

A genuine question remains regarding whether Mr. Acolatse's confirmed diagnosis of kidney disease in 2000 could have been an extension of earlier undiagnosed renal disease. And, in turn, whether Mr. Acolatse could have met the definition of disability as of December 31, 1997. Mr. Acolatse requested the appointment of a medical expert to properly consider the medical evidence in the record, particularly the evidence from Ghana which may not have been in the same format as medical records from the United States. While appointment of experts is normally within the discretion of Administrative Law Judges (*see* 20 CFR §404.1527(f)(2)(iii)), the failure to do so here constitutes an improper assessment of the medical evidence, which is legal error.

The significant date for disability compensation is the date of onset of the disability rather than the date of diagnosis. *Morgan v. Sullivan,* 945 F.2d 1079, 1081 (9th Cir. 1991). Social Security Ruling 83-20 details the policy regarding determination of onset of disability:

> In disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity. . . With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling . . . In such cases, it will be

> necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process . . . In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on the informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. *At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.*

*Morgan*, 945 F.2d at 1082 (citing Social Security Ruling 83-20) (emphasis added)).

At the hearing, the ALJ was reluctant to consider the records from Ghana because Dr. Ansah identified himself as an herbal practitioner and not a physician. The ALJ concluded that Dr. Ansah did not qualify as a treating source under SSA regulations. Regardless of Dr. Ansah's qualifications however, he also submitted summaries of his reports which included objective laboratory test results. There are lab report summaries in Exhibit 5-F of the SSA record from December 22, 1994 periodically through February 17, 2000. The ALJ discounted these objective laboratory test results without any explanation as to why they were not credible or why they should not be considered, regardless of the qualifications of the treating doctor who may have ordered the tests. Although the results are in a format different from conventional records made in American medical practice, there is no evidence in the record that a medical expert would not be able to read and interpret the evidence submitted. Moreover, the ALJ failed to set forth specific and legitimate reasons for rejecting such evidence, including the laboratory test results and the declaration of Dr. Lin.

The report of the State agency physician at SSA Ex. 3-F concludes that there is no evidence of disability prior to the date last insured. However, this is based solely on reviewing the medical evidence submitted as of July 7, 2004, which did not include the Ghana blood test results and the opinions of Mr. Acolatse's treating physicians. Therefore the record was incomplete when reviewed by the State agency physicians.

The ALJ's failure to appoint a medical expert to interpret this evidence is a failure to weigh and consider all pertinent medical evidence, particularly since this is the only objective and documented medical evidence before the date last insured of December 31, 1997. Finally, since Mr. Acolatse's current treating physician, Dr. Lin, bases some of her opinions on these lab results from

1  Mr. Acolatse's time in Ghana, the records would clearly be understandable by a medical expert and
2  would constitute pertinent medical evidence relevant to evaluating the onset of disability for Mr.
3  Acolatse.  The ALJ failed to resolve conflicts in the evidence and instead, opted to merely disregard
4  such evidence altogether.  Finally, the ALJ failed to provide clear and convincing reasons for
5  disregarding the evidence presented.

> **B.    MR. ACOLATSE'S SUBJECTIVE TESTIMONY OF HIS IMPAIRMENTS IS CONSISTENT WITH THE MEDICAL RECORD**

8  Reviewing the record as a whole, Mr. Acolatse's claims regarding his limitations and
9  impairments do not appear to be contradicted, and thus, there is no basis for discounting the
10  subjective account of his impairments.  At the hearing, the ALJ relied solely on the lack of objective
11  medical evidence and Mr. Acolatse was not given the chance to testify about his impairments.  A
12  lack of objective evidence alone is not conclusive and does not result in an automatic denial of
13  benefits.

14  When a claimant demonstrates the existence of a condition that would cause some degree of
15  pain or dysfunction, the ALJ must articulate specific, convincing reasons for rejecting the claimant's
16  subjective testimony regarding his pain and limitations.  *See Fair v. Bowen*, 885 F.2d 597, 601-04
17  (9th Cir. 1989); *see also, e.g. Tonapetyan v. Halter*, 242 F.3d 1144, 1147-48 (9th Cir. 2001).  An
18  ALJ may not reject a claimant's statements regarding her limitations merely because they are not
19  fully corroborated by objective evidence.  *See Bunnell v. Sullivan*, 947 F.2d 341, 343-45 (9th Cir.
20  1991) (en banc).  "General findings are insufficient; rather, the ALJ must identify what testimony is
21  not credible and what evidence undermines the claimant's complaints."  *See Lester v. Chater*, 81
22  F.3d 821, 834 (9th Cir. 1995); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

23  The ALJ made no findings that Mr. Acolatse's claims regarding his impairments were not
24  credible.  While there may be an arguable lack of objective medical evidence to substantiate his
25  claim of disability as of 1997, the declarations of multiple medical practitioners stating that this is
26  likely, weighs in favor of Mr. Acolatse's credibility.  For example, the August 27, 2008 Declaration
27  of Dr. Japhet Kofi Seglah, another medical practitioner from Ghana, states that he was consulted by
28  Dr. Ansah in March 1997 "to try to resolve the serious illness of Mr. Atsu Acolatse."  (Seglah Decl.

¶ 3). While his statements that Mr. Acolatse was unable to engage in gainful activity may be conclusory, he claims to have reviewed the records of Dr. Ansah going back to 1994 and remembers personally treating Mr. Acolatse in 1997. (Seglah Decl. ¶ 11).

Dr. Cynthia Lin, a treating physician of Mr. Acolatse's since 2004, also claims to have further reviewed the medical records and now believes that the patient's "blood tests and complaints of extreme fatigue as early as May 1997 [are] consistent with the existence of renal disease in 1997 or earlier."[2] (Lin Decl. ¶ 7). Dr. Lin states that based on a "re-examination of the facts and history," there is no other reasonable explanation to be drawn from the records and history other than that Mr. Acolatse was disabled from his kidney disease in 1997. (*Id* at ¶ 9). She also states that the "blood tests provided by the healthcare providers in Ghana indicate the presence of kidney disease as well as clearly indicate the existence of chronic fatigue going back to May 1997 at the latest." *(Id* at ¶ 10). She bases her opinion on the evidence of medical examinations performed in Ghana, including patient history and specific tests of blood and other vital statistics. (*Id* at ¶ 8).

Furthermore, a letter from Dr. Boatwright dated September 19, 2005, confirms that Mr. Acolatse had specific medical issues dating back to 1992. The letter is one more factor tending to lend credibility to Mr. Acolatse's claims regarding his impairments. Dr. Boatwright states that he saw Mr. Acolatse several times from 1992 to 1994, and was diagnosed with hypertension and probable early Congestive Heart Failure. (SSA Ex. 16-F). He also discussed the "possibility of developing worsening renal status, which could lead to renal failure." This indicates that Mr. Acolatse may have had kidney problems, or at the very least, symptoms that could lead to kidney problems at least as early as the date his treatment with Dr. Boatwright ended in 1994. While Dr. Boatwright does opine that he does not feel Mr. Acolatse was unable to engage in full-time work as of 1994, there is no indication that his worsening condition prevented him from engaging in full-time work at some point over the next three years.

**C.   THE ALJ'S FINDING NUMBER 4 IS NOT SUPPORTED BY SUBSTANTIAL**

---

[2] Dr. Lin amended her statement. Initially she opined in an August 2005 letter that it was possible Mr. Acolatse could have been disabled in 1997 by his kidney disease. Later she submitted a declaration on July 3, 2008 and concluded that there is no other reasonable explanation to be drawn from Mr. Acolatse's medical records and history other than the fact that he was disabled in 1997 due to his kidney disease.

**EVIDENCE**

Evidence in the record supports Plaintiff's contention that he suffered from the same symptomology for a decade and tried diligently to determine what was causing the trouble. While the ALJ correctly noted that specific diagnosis of renal failure in medical records is not shown until years after his date last insured, Plaintiff may have suffered from it earlier. Doctors simply may have been unable to pinpoint the exact diagnosis.

The ALJ stated in finding number 4 that "[t]here is insufficient longitudinal medical evidence to find that the claimant had an ongoing, medically-determinable 'severe' impairment lasting for 12 continuous months beginning prior to his date last insured of December 31, 1997, that would have prevented him from returning to his past relevant work."

Mr. Acolatse's claimed ailments from 1992 onwards may have been consistent with progressive kidney disease. As early as 1992 when he stopped working, Mr. Acolatse complained of flank pain. Flank pain is one of the symptoms of hydronephrosis. The kidneys in large part also regulate blood pressure. Ann G. Hirschman, *Medical Proof of Social Security Disability*, 2d, § 7-3 (West 2005, 2008-2009 Supplement). In or around 1992 to 1994, Dr. Boatwright diagnosed Mr. Acolatse with hypertension. His diagnosis may be further evidence that Mr. Acolatse's kidneys were not functioning properly at that time.

Additionally, Mr. Acolatse had diabetes since at least 1997, which is also known to cause damage to the kidneys. Some of the symptoms of diabetes and kidney disease are the same. *See* Ann G. Hirschman, *Medical Proof of Social Security Disability*, 2d, § 7-3 (West 2005, 2008-2009 Supplement). As such, Mr. Acolatse may have had early stages of kidney disease in 1997 and not just diabetes.

The substantial similarity between the early symptoms Mr. Acolatse has complained of since he stopped working in 1992 with the later symptoms of the disabling diseases he was eventually diagnosed with could constitute "longitudinal" medical evidence that Mr. Acolatse had an ongoing, medically-determinable severe impairment lasting for 12 continuous months and beginning prior to his date last insured of December 31, 1997. Therefore, the ALJ's finding of insufficient longitudinal medical evidence to support Mr. Acolatse's ongoing impairment is not supported by substantial

evidence in the record.  Furthermore, a medical expert would likely have been helpful to the ALJ in evaluating this evidence and determining whether Mr. Acolatse's symptoms were related to the same ongoing disease or not.  Accordingly, the ALJ should have appointed a medical expert and the failure to do so constitutes legal error.

## VI.   CONCLUSION

The ALJ committed legal error in not considering all of the pertinent medical evidence presented and for failing to appoint a medical expert to help ascertain an onset date of Mr. Acolatse's disability.  Furthermore, the ALJ's finding number four is not supported by substantial evidence.  Accordingly, the parties' respective cross-motions for summary judgment are DENIED, and the case is REMANDED to the Administrative Law Judge for further proceedings.

IT IS SO ORDERED.

Dated:   April 16, 2009

*Patricia V. Trumbull*
_____
PATRICIA V. TRUMBULL
United States Magistrate Judge